786 So.2d 1173 (2001)
Wade CARTER, Petitioner,
v.
STATE of Florida, Respondent.
No. SC92501.
Supreme Court of Florida.
May 24, 2001.
*1174 Wade Carter, Bushnell, FL, Petitioner, pro se.
Robert A. Butterworth, Attorney General, and Roberta J. Tylke, and Kellie A. Nielan, Assistant Attorneys General, Daytona Beach, FL, for Respondent.
PARIENTE, J.
We have for review Carter v. State, 704 So.2d 1068 (Fla. 5th DCA 1997), which expressly and directly conflicts with the decision of the First District Court of Appeal in Sneed v. State, 754 So.2d 53 (Fla. 1st DCA 2000), the decisions of the Second District Court of Appeal in Young v. State, 716 So.2d 280 (Fla. 2d DCA 1998),[1] and Nathan v. State, 689 So.2d 1150 (Fla. 2d DCA 1997), and the decision of the Fourth District Court of Appeal in Austin v. State, 756 So.2d 1080 (Fla. 4th DCA 2000). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.[2] The conflict issue is whether a habitual offender sentence imposed on a life felony may be corrected as illegal through a motion filed pursuant to Florida Rule of Criminal Procedure 3.800(a), where the habitual offender statute in existence at the time of the defendant's crime did not provide for habitualization of life felonies.

BACKGROUND
The facts are undisputed. Carter received a forty-year sentence as a habitual offender for second-degree murder with a weapon, which constitutes a life felony. *1175 See Carter, 704 So.2d at 1069-70. Under the version of the habitual offender statute in existence at the time that Carter committed his offense, the statute did not provide an enhanced habitual offender penalty for a defendant who committed a life felony. See Lamont v. State, 610 So.2d 435, 438 (Fla.1992) ("Both the plain language and the history of the relevant statutes lead us to hold that one convicted of a life felony is not subject to enhanced punishment as a habitual offender under section 775.084."); Carter, 704 So.2d at 1070.[3] Carter filed a postconviction motion pursuant to rule 3.800(a), contending that because life felonies were not subject to habitualization under the statute, his habitual offender sentence was illegal. See Carter, 704 So.2d at 1069. The trial court denied relief and the Fifth District affirmed. See id. at 1068-69. Relying on our opinions in King v. State, 681 So.2d 1136 (Fla.1996), Davis v. State, 661 So.2d 1193 (Fla.1995), and State v. Callaway, 658 So.2d 983 (Fla. 1995), receded from on other grounds, Dixon v. State, 730 So.2d 265 (Fla.1999), the Fifth District concluded that Carter's "improper habitualization" was not "illegal" and therefore was not "remediable under Rule 3.800(a) as long as the sentence is within the statutory maximum for the offense." 704 So.2d 1070.
As in Carter, the defendant in Nathan alleged that his sentence of forty years as a habitual offender was illegal because his convictions were for life felonies and the habitual offender statute in existence at the time of his crime did not provide an enhanced habitual offender penalty for a defendant who committed a life felony. Nathan, 689 So.2d at 1151. In contrast to Carter, however, the Second District found that the sentence was illegal because "the terms or conditions of the sentence exceed those authorized by the habitual offender statute." Id. (citing Judge v. State, 596 So.2d 73 (Fla. 2d DCA 1991) (en banc)). Similarly, in Young, the Second District again relied upon Judge to conclude that improper habitualization of a life felony is illegal because "the terms or conditions of the punishment for a particular offense are impermissible as a matter of law." 716 So.2d at 282. More recently, the First District in Sneed, 754 So.2d at 54, and the Fourth District in Austin, 756 So.2d at 1081, also agreed that a defendant's sentence is subject to correction pursuant to rule 3.800(a) where the habitual offender statute in effect at the time did not permit habitualization for life felonies.

ANALYSIS
The issue in this case requires us to determine whether a habitual offender sentence may be corrected as an illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) when the habitual offender statute in effect at the time of the defendant's offense did not permit habitualization for life felonies. This case also presents an opportunity for this Court to further clarify its definition of "illegal sentence" for purposes of rule 3.800(a) as well as to consider whether, in the future, rule 3.800(a) should be revised as advanced by Judge Cope in Bover v. State, 732 So.2d 1187, 1193 (Fla. 3d DCA 1999), review granted, 743 So.2d 508 (Fla.1999) (No. 95,649), to specifically identify the types of sentencing errors that are "sufficiently important" to be corrected at any time through a motion to correct an illegal sentence.

*1176 1. Evolving Definition of Illegal Sentence

Since 1968, our procedural rules have provided for the correction of illegal sentences. Rule 3.800(a), entitled "Correction, Reduction, and Modification of Sentences" provides that a "court may at any time correct an illegal sentence imposed by it."[4] Accordingly, rule 3.800(a) vests trial courts with the broad authority to correct an illegal sentence without imposing a time limitation on the ability of defendants to seek relief. The rule, however, does not include a definition of "illegal sentence." As we recently observed, the definition of "illegal sentence" as interpreted by case law has narrowed significantly since that term was used in the 1960s and 1970s. See Maddox v. State, 760 So.2d 89, 96 n. 6 (Fla.2000).
Although sentencing may have been a relatively straightforward exercise when we first adopted the procedural rule to correct illegal sentences "at any time," sentencing has become increasingly more complex. See Amendments to Fla. Rules of Criminal Procedure 3.111(e) & 3.800 & Fla. Rules of Appellate Procedure 9.020(h), 9.140, & 9.600, 761 So.2d 1015, 1017 (Fla.1999), reh'g granted, 761 So.2d 1025 (Fla.2000). This is due in part to the multitude of sentencing statutes that have proliferated since the Court first adopted rule 3.800. In addition, many of these laws are frequently amended. The habitual offender statute, section 775.084, which authorizes extended terms of imprisonment for those who meet the statutory requirements, is but one prominent example. Therefore, expertise in sentencing is required by the defense, the State, and the trial court.
Despite the best intentions of all participants, sentencing in a given case may be filled with hidden traps, thus requiring sufficient procedural safeguards to protect against a sentencing error that would require a defendant to serve more time than authorized by law. This reality precipitated our recent decision to expand the ability of defendants to file a motion to correct sentence in the trial court pursuant to rule 3.800(b) from thirty days after the rendition of the sentence to "at any time until the first appellate brief is filed." Id. at 1018.
Rule 3.800(a) is intended to balance the need for finality of convictions and sentences with the goal of ensuring that criminal defendants do not serve sentences imposed contrary to the requirements of law. Thus, over the past several years, this Court has attempted to formulate a workable definition of what type of sentences should be considered "illegal" for purposes of rule 3.800(a). In Davis, the defendant claimed his departure sentence was illegal because the trial court failed to reduce to *1177 writing the reasons for departure at the time of sentencing. 661 So.2d at 1194. Although the defendant's sentence was within the maximum authorized by law, the sentence was outside the range of the sentencing guidelines. See id. In rejecting the defendant's claim, we held that the trial court's failure to file written findings for a departure sentence did not render the resulting sentence illegal and subject to correction at any time pursuant to rule 3.800(a). See id. at 1196. Rather, we concluded that "an illegal sentence is one that exceeds the maximum period set forth by law for a particular offense without regard to the guidelines." Id. We additionally made the statement that seemingly narrowed the definition of an "illegal sentence" by stating that "[o]nly if the sentence exceeds the maximum allowed by law would the sentence be illegal." Id.
On the same day that we issued our opinion in Davis, we also issued our opinion in State v. Callaway, 658 So.2d 983 (Fla.1995). In Callaway, the defendant claimed that his sentence was illegal because the trial court had imposed consecutive habitual felony offender sentences for offenses arising out of the same criminal episode in violation of Hale v. State, 630 So.2d 521 (Fla.1993). Callaway, 658 So.2d at 985. In rejecting the argument that the sentence was illegal, our decision turned not on our definition of "illegal sentence," but on the fact that the error at issue was not patent from the record. See id. at 988. The Court reasoned that because "[a] rule 3.800 motion can be filed at any time, even decades after a sentence has been imposed... its subject matter is limited to those sentencing issues that can be resolved as a matter of law without an evidentiary determination." Id.
We soon explained that our definition of "illegal sentence" in Davis should not be construed so narrowly as to preclude correction of a sentence that had been unconstitutionally lengthened in violation of the Double Jeopardy Clause. Thus, in Hopping v. State, 708 So.2d 263, 265 (Fla. 1998), we concluded that a sentence that was increased upon resentencing in violation of the Double Jeopardy Clause constituted an illegal sentence in that it exceeded "the maximum period set forth by law for a particular offense without regard to the guidelines." We held that "where it can be determined without an evidentiary hearing that a sentence has been unconstitutionally enhanced in violation of the double jeopardy clause, the sentence is illegal and can be reached at any time under rule 3.800." Id.
Following Hopping, in State v. Mancino, 714 So.2d 429, 433 (Fla.1998), the Court concluded that the failure to credit a defendant with jail time served constituted an "illegal" sentence that should be corrected pursuant to rule 3.800(a). In Mancino, we clarified that "[a]s is evident from our recent holding in Hopping, we have rejected the contention that our holding in Davis mandates that only those sentences that facially exceed the statutory maximums may be challenged under 3.800(a) as illegal." Id. at 433. Accordingly, we implicitly, if not expressly, receded from Davis in Mancino and Hopping to the extent that Davis could be read to limit challenges under rule 3.800(a) to only those sentences that exceed the statutory maximum. We went on in Mancino to state that a "sentence that patently fails to comport with statutory or constitutional limitations is by definition `illegal.'" Id.
Although we may have defined "illegal" too narrowly in Davis, it appears that our newly formulated definition in Mancino may be overly broad. Both the Third and Fourth Districts have expressed the concern that defining an illegal sentence as one that "patently fails to comport with *1178 statutory or constitutional limitations" is too expansive because it encompasses all patent sentencing errors. See Bover, 732 So.2d at 1193; Blakley v. State, 746 So.2d 1182, 1186 (Fla. 4th DCA 1999). The Third District has lamented:
Rule 3.800(a) motions now routinely rely upon the statement in State v. Mancino, 714 So.2d 429, 433 (Fla.1998), that "[a] sentence that patently fails to comport with statutory or constitutional limitations is by definition `illegal.'" Although not intended, the statement is being interpreted as saying that any sentencing error which can be gleaned from the face of the record renders a sentence illegal, and may be raised at any time.
Bover, 732 So.2d at 1193; see Kelly v. State, 739 So.2d 1164, 1165 (Fla. 5th DCA 1999) (observing that "[r]ule 3.800(a) motions now routinely rely on the language in Mancino which has been interpreted to allow review of any sentencing error discernable from the face of the record"). Despite these interpretations of Mancino, the Fourth District has concluded that the "supreme court did not intend to enlarge the universe of illegal sentences beyond the three kinds identified in Davis, Callaway, Hopping and Mancino." Blakley, 746 So.2d at 1186.
We continue to refine our definition of "illegal sentence" in an attempt to strike the proper balance between concerns for finality and concerns for fundamental fairness in sentencing. In this endeavor, we have been assisted ably by the appellate courts, which continue to be confronted daily with the question of what sentences are "illegal" and correctable "at any time" and what sentences, although failing to comply with the law, are not subject to correction. Attempting to formulate a more workable definition of "illegal sentence," Judge Farmer has explained:
To be illegal within the meaning of rule 3.800(a) the sentence must impose a kind of punishment that no judge under the entire body of sentencing statutes could possibly inflict under any set of factual circumstances. On the other hand, if it is possible under all the sentencing statutesgiven a specific set of factsto impose a particular sentence, then the sentence will not be illegal within rule 3.800(a) even though the judge erred in imposing it.
Blakley, 746 So.2d at 1186-87 (emphasis supplied). With these previous definitions of "illegal sentence" in mind, we turn to the specific issue in this case-whether the improper habitualization of a life felony should be considered an illegal sentence subject to correction pursuant to rule 3.800(a).

2. Improper Habitualization of Life Felonies

All of the district courts that have considered the discrete question presented in this case are now in agreement that when a defendant receives a habitual offender sentence for a life felony where the habitual offender statute in effect at the time of the defendant's offense did not permit habitualization for life felonies, the resulting sentence can be corrected pursuant to rule 3.800(a). See Austin, 756 So.2d at 1081; Sneed, 754 So.2d at 54; Young, 716 So.2d at 281-82.
Although it did not recede from its contrary holding in Carter, the Fifth District in a subsequent panel decision in Summers v. State, 747 So.2d 987, 989 (Fla. 5th DCA 1999), concluded that a habitual offender sentence based on a life felony was illegal. In reaching this conclusion, the Fifth District relied on Mancino, a decision we issued after the Fifth District's opinion in Carter. See id. In Summers, the Fifth District reasoned that "if the supreme *1179 court allows a jail credit error apparent from the record to be corrected under Rule 3.800(a) [in Mancino], surely an improper habitual offender classification, also apparent from the record, could and should be remedied under Rule 3.800(a)." Id. The court in Summers concluded that a sentence habitualizing a life felony is illegal because "under the law the court could not have imposed it in any circumstance." Id. at 988.[5]
This conclusion is similar to that of the First District that this type of error can be corrected as an illegal sentence under Mancino. See Sneed, 754 So.2d at 54. Moreover, the Fourth District has concluded that improper habitualization of a life felony meets the definition of an illegal sentence as set forth in its decision in Blakley because it is a sentence "no judge under the entire body of sentencing statutes could possibly inflict." Austin, 756 So.2d at 1081 (quoting Blakley, 746 So.2d at 1186-87).
In Beaudoin v. State, 658 So.2d 663, 664 (Fla. 3d DCA 1995), the Third District likewise held, based on the State's "candid and well-taken partial confession of error," that habitualization for a life felony constitutes an illegal sentence requiring the denial of rule 3.800 relief to be reversed as to the habitual offender sentence for the life felony. The Third District also has corrected as illegal a similar error that occurred when the defendant received a habitual offender sentence for possession of cocaine, another offense that does not qualify for habitualization under the statute. See Marrero v. State, 741 So.2d 634, 635 (Fla. 3d DCA 1999); Ellis v. State, 703 So.2d 1186, 1187 (Fla. 3d DCA 1997).
In Bover, however, a decision that was issued after Beaudoin and Ellis but before Marrero, the Third District appears to have taken a more narrow view of what constitutes an illegal sentence. 732 So.2d at 1190. In Bover, the Third District concluded that as long as the sentence received falls within the statutory maximum under the habitual offender statute, it does not constitute an illegal sentence because the error occurred in the process of habitualization rather than in the imposition of sentence. See id. The Third District reasoned:
Habitualization is a two-step process. In the first step, the defendant is adjudicated to be a habitual offender. Once that is done, the trial court knows what the permissible legal maximum may be. In the second step, the court imposes sentence.
For Rule 3.800(a) purposes, the difference between the two steps is important. Rule 3.800(a) is by its terms confined to challenging an "illegal" sentence. Imposition of sentence occurs in the second step of the habitualization process. The defendant's real target in this case is not the second step but the first: the adjudication of defendant as a habitual offender.

Id. (emphasis supplied). This broad statement appears to conflict with the Third District's later decision in Marrero, 741 So.2d at 634, and its earlier decisions in *1180 Ellis, 703 So.2d at 1186, and Beaudoin, 658 So.2d at 663. However, Bover is neither mentioned nor clarified in Marrero. Because the Third District in Bover did not mention its earlier decision in Beaudoin, we assume the Third District did not intend to exclude improper habitualization for a life felony from consideration as an illegal sentence. As noted by the Fourth District in Austin:
The third district, which issued Bover, has itself granted relief under rule 3.800(a) for a claim such as Appellant's, see Beaudoin v. State, 658 So.2d 663 (Fla. 3d DCA), rev. denied, 664 So.2d 248 (Fla.1995), and recently granted such relief in an analogous claim, that of improper habitualization for a drug possession charge when the statute does not allow such sentencing, see Marrero v. State, 741 So.2d 634 (Fla. 3d DCA 1999). So far as we can determine, the third district has not receded from Beaudoin, and the first, second, and fifth districts also all consider the habitualization of a life felony committed at a time when the statute did not permit habitualization for such an offense to be illegal and subject to correction pursuant to rule 3.800(a). See Sneed v. State, 754 So.2d 53 (Fla. 1st DCA 2000); Young v. State, 716 So.2d 280 (Fla. 2d DCA 1998); Summers v. State, 747 So.2d 987 (Fla. 5th DCA 1999).
756 So.2d at 1081.
To the extent that the reasoning of Bover would preclude a finding of an illegal sentence because the habitualization of a life felony occurred in the "first step of the process," we disagree. We hold that a habitual offender sentence, which is solely a creature of statute, is illegal where the habitual offender statute in effect at the time of the offense prohibited the imposition of a habitual offender sentence.
Carter, who was convicted of a life felony, received a habitual offender sentence when, as a matter of law, the version of section 775.084, Florida Statutes, in effect at the time of the sentencing unquestionably did not permit habitualization for life felonies. Carter received the more onerous terms and conditions of a habitual offender sentence when the existing law plainly and clearly did not authorize the imposition of a habitual offender sentence. The terms and conditions of Carter's sentence are illegal for purposes of rule 3.800(a) as a matter of law because they exceed those authorized by statute for the adjudicated offense of second-degree murder with a weapon. Because the error in sentencing Carter as a habitual offender for a life felony is apparent on the face of the record, Carter is entitled to relief pursuant to rule 3.800(a).[6]
We emphasize that this is not a case, as in Davis, where the error was in a failure to comport with statutory procedural safeguards employed in the imposition of the sentence. See Judge, 596 So.2d at 77. Nor is this a case like King where the defendant qualified for habitual offender status at the time of the original sentencing.[7]
*1181 This error in punishing Carter as a habitual offender was the "kind of punishment that no judge under the entire body of sentencing statutes could possibly inflict under any set of factual circumstances." Blakley, 746 So.2d at 1187. Or, as explained by the Fifth District, "under the law the court could not have imposed it in any circumstance." Summers, 747 So.2d at 988. Or, as stated by the Second District in Young, a sentence is "illegal ... if the terms or conditions of the punishment for a particular offense are impermissible as a matter of law." 716 So.2d at 282. Although expressed in differing ways, the core definition of "illegal" set forth in these cases helps to explain why this sentence should be corrected under rule 3.800.
In Bover, the Third District suggested that the Court revisit its definition of "illegal sentence":
The better approach would be to decide what postconviction matters are sufficiently important that they can be raised at any time, and to amend the postconviction rules to identify those matters specifically. The term "illegal sentence" in Rule 3.800(a) should be explicitly defined, or abandoned.
732 So.2d at 1193. We decline to amend sua sponte the rules because such an important matter needs study and input from diverse viewpoints. Moreover, we approve of Judge Farmer's definition in Blakley that a sentence is "illegal" if it "imposes a kind of punishment that no judge under the entire body of sentencing statutes could possibly inflict under any set of factual circumstances"because it comes close to formulating a workable definition of "illegal" sentence. 746 So.2d at 1187.
As in Maddox, however, we conclude that it would be more helpful to provide a predictive description of the types of sentencing errors that may be corrected as illegal, rather than relying on a somewhat elusive definition of "illegal sentence." Following the suggestion in Bover, we have referred the question of whether rule 3.800(a) should be amended to the Criminal Appeals Reform Act Committee and the Florida Bar Criminal Procedure Rules Committee and requested that they jointly consider this matter that is important to the fair and efficient administration of justice. We have asked that the committees consider the Third District's suggestion in Bover that the rules be amended to identify specifically those matters that are sufficiently important to be raised at any time. This suggestion should not be interpreted to limit the committees' study.
We quash Carter, approve Nathan, Young, Austin, and Sneed, and disapprove the reasoning in Bover to the extent it is inconsistent with this opinion. We remand *1182 for proceedings consistent with this opinion.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, and LEWIS, JJ., concur.
QUINCE, J., concurs in result only.
NOTES
[1] We note that the Second District in Young certified conflict with Carter. 716 So.2d at 282. Because Young is not before this Court, our jurisdiction is not based on certified direct conflict. See art. V, § 3(b)(4), Fla. Const.
[2] Subsequent to the Fifth District's decision in Carter and after we accepted jurisdiction, the Fifth District in another panel decision, Summers v. State, 747 So.2d 987, 989 (Fla. 5th DCA 1999), concluded that a habitual offender sentence based on a life sentence was illegal. Without expressly receding from Carter by issuing an en banc opinion, see Fla. R.App. P. 9.331(d); In re Rule 9.331, Determination of Causes by a District Court of Appeal En Banc, Fla. Rules of Appellate Procedure, 416 So.2d 1127, 1128 (Fla.1982), the Fifth District recognized that its decision in Carter had been "abrogated." See Carter v. State, 747 So.2d 483, 484 (Fla. 5th DCA 2000) ("Carter II") (citing Summers, 747 So.2d at 987). Because we properly accepted this case based on our conflict jurisdiction, because neither party has asked us to dismiss this review proceeding, and because the Fifth District has not expressly receded from Carter, we exercise our discretion not to dismiss the case. In fact, the Fifth District in Carter II recognized that "[b]ecause Carter's sentences are currently under review by the Florida Supreme Court, we hold that Carter must wait until the court rules on the legality of his sentences in the earlier proceedings." Carter II, 747 So.2d at 484. Cf. State v. Walker, 593 So.2d 1049 (Fla.1992) (dismissal of review proper where jurisdiction was improvidently granted because there was no express and direct conflict at the time the Court accepted jurisdiction).
[3] The Legislature amended the habitual felony offender statute to apply to life felonies effective October 1, 1995. See ch. 95-182 § 2, at 1669, Laws of Fla. (codified at § 775.084(4)(a), (b) Fla. Stat. (1995)).
[4] Originally, the rule was contained in Florida Rule of Criminal Procedure 1.800(a) and provided: "A court may at any time correct an illegal sentence imposed by it." The Court adopted this rule on March 1, 1967, and it became effective on January 1, 1968. The version of rule 3.800(a) in effect as of the date Carter filed his motion contained the same language, but also provides that a court may correct "an incorrect calculation made by it in a sentencing guideline scoresheet." The Court added this specific language regarding scoresheet errors through our opinion in State v. Whitfield, 487 So.2d 1045, 1047 (Fla.1986), receded from on other grounds in Davis, 661 So.2d at 1196. Effective January 1, 2001, we also have added language to the rule that specifies that a court may correct a "sentence that does not grant proper credit for time served when it is affirmatively alleged that the court records demonstrate on their face an entitlement to that relief." Amendments to Fla. Rules of Criminal Procedure, 25 Fla. L. Weekly S995, S1005-06, ___ So.2d ___, 2000 WL 1637548 (Fla. Nov. 2, 2000) (explaining that purpose of this amendment is to conform rule 3.800(a) to this Court's decision in State v. Mancino, 714 So.2d 429 (Fla.1998)).
[5] Further, we note that after Carter filed the appeal in the instant case, he filed a postconviction motion under rule 3.800(a) to correct an alleged error by the trial court for not awarding proper jail time credit on all of his concurrent sentences. See Carter II, 747 So.2d at 484. The Fifth District affirmed the denial of relief under rule 3.800(a) "without prejudice to refile his motion in the trial court when the supreme court rules on his earlier 3.800 challenge." See id. The Fifth District noted, however, that its determination that a rule 3.800(a) motion cannot be used to contest an improper habitualization in the case currently before this Court had been "abrogated" by its subsequent decision in Summers. See Carter II, 747 So.2d at 484.
[6] In this case, the length of the sentence imposed upon Carter was not affected by the improper habitualization because the trial court entered a proper upward departure sentence and the sentence imposed was within the statutory maximum for a life felony. Nonetheless, improper habitualization may have collateral consequences that could ultimately increase the length of Carter's sentence. See generally Ashley v. State, 614 So.2d 486, 489 (Fla.1993) (stating that the habitual offender statute "ensures that defendants will serve a greater portion of their sentences by eliminating the possibility of early release through parole, or accrual of basic or meritorious gain-time or provisional credits" and habitual violent felony offenders receive mandatory minimum terms).
[7] In King, 681 So.2d at 1138, this Court found that reversible error occurred when the trial judge sentenced the defendant as a habitual offender following his violation of probation when the trial court had elected not to impose a habitual offender sentence at the time of the initial sentencing. King involved a direct appeal and not a collateral attack on the sentence. Therefore, our recitation of the statement from Davis, 661 So.2d at 1196, that a sentence is illegal "if the sentence exceeds the statutory maximum," King, 681 So.2d at 1140, is dicta. To the extent that the opinion has been construed to limit illegal sentences under rule 3.800(a) to that definition, we recede from that statement. Moreover the question of whether a defendant can enter a plea bargain to a sentence not specifically authorized by statute, as long as the sentence does not exceed the statutory maximum, is not an issue before us in this case as Carter's sentence was not the product of a plea bargain. See King, 681 So.2d at 1139 (distinguishing a negotiated sentence not specifically authorized by statute from a sentence that exceeds the statutory maximum).