796 So.2d 618 (2001)
Albert F. PANKHURST, Appellant,
v.
STATE of Florida, Appellee.
No. 2D00-4358.
District Court of Appeal of Florida, Second District.
September 26, 2001.
*619 FULMER, Judge.
Albert F. Pankhurst challenges the order of the trial court denying his motion to correct illegal sentence filed pursuant to Florida Rule of Criminal Procedure 3.800(a). We have jurisdiction. See Samuels v. State, 757 So.2d 1273 (Fla. 4th DCA 2000). We reverse.
In July 1990, Pankhurst pleaded guilty to dealing in stolen property (count one) and third-degree grand theft (count two). He was sentenced to two years' concurrent probation on each count. The trial court announced that it was necessary for the protection of the public that Pankhurst serve his probationary sentences as a habitual offender. The plea colloquy is terse at best but reflects that the plea resulted from an off-the-record discussion with the trial court and was not the result of a negotiated plea with the State.[1] In 1992, *620 Pankhurst violated his probation and was sentenced to thirty years' prison as a habitual offender on count one and ten years' prison as a habitual offender on count two with the sentences to run concurrently.
In his motion, Pankhurst argued that notwithstanding the fact that the trial court announced that a habitual offender sentence was being imposed, a sentence of probation is not authorized by the habitual offender statute and is, therefore, not a habitual offender sentence. Consequently, the trial court was precluded from imposing a habitual offender sentence upon revocation of probation. Pankhurst is correct.
After a trial court determines that a defendant qualifies as a habitual offender, it must then decide whether to impose a habitual offender sentence. Sentencing under the habitual offender statute is permissive, not mandatory. If the trial court elects to impose a habitual offender sentence, it need not make specific findings that a habitual offender sentence is necessary for the protection of the public, as was required prior to the 1988 amendments to the habitual offender statute. The trial court may simply impose any sentence provided for in the statute. King v. State, 681 So.2d 1136 (Fla.1996), receded from on other grounds, Carter v. State, 786 So.2d 1173 (Fla.2001). The sentences provided for in the habitual offender statute have been interpreted by the supreme court to mean "any term of years" up to the maximum specified for the particular offense level, provided the term of years is not more lenient than that required by the habitual offender statute or recommended by the sentencing guidelines.[2]Geohagen v. State, 639 So.2d 611 (Fla.1994); State v. Rinkins, 646 So.2d 727 (Fla.1994).
Needless to say, a term of probation is more lenient than a term of years and is, therefore, not an authorized habitual offender sentence. In Geohagen, the supreme court held that upon sentencing a habitual offender to community control or probation, the trial court must sentence the offender under the guidelines and set forth written reasons for a downward departure should the guidelines recommendation call for a sentence other than probation or community control.[3] The court also held that upon sentencing a habitual *621 offender to community control or probation, the trial court is not required to make a specific finding, pursuant to section 775.084(4)(c), that a sentence as a habitual offender is not necessary to protect the public because "[b]y virtue of sentencing a habitual offender to a more lenient sentence [i.e., probation] than that required by section 775.084, Florida Statutes (1991) [i.e., a term of years], the judge has necessarily decided that a habitual offender sentence is not necessary."[4] 639 So.2d at 612. Thus, Pankhurst's initial sentence of probation was not a habitual offender sentence. A habitual offender sentence may not be imposed upon revocation of probation where a habitual offender sentence was not initially imposed. King v. State, 681 So.2d 1136.
Accordingly, we reverse and remand for resentencing under the guidelines.
BLUE, C.J., and SALCINES, J., Concur.
NOTES
[1] If Pankhurst had entered a negotiated plea whereby he agreed to be sentenced as a habitual offender upon revocation of his probation, he would not be entitled to relief. See King v. State, 681 So.2d 1136 (Fla.1996), receded from on other grounds, Carter v. State, 786 So.2d 1173 (Fla.2001); Walker v. State, 682 So.2d 555 (Fla.1996).
[2] In State v. Rinkins, 646 So.2d 727 (Fla. 1994), the supreme court appears to have substantially broadened its view expressed in Geohagen v. State, 639 So.2d 611 (Fla.1994), of what constitutes a habitual offender sentence. In Geohagen the court took the position that a sentence more lenient than that required by the habitual offender statute could not be imposed as a habitual offender sentence. In Rinkins, without explanation, the court expanded its position and not only reiterated the language from Geohagen but enlarged the scope of those sentences that would not qualify as a habitual offender sentence to now include those which are more lenient "than that recommended by the sentencing guidelines." Rinkins, 646 So.2d at 729. Not only does the reference to the sentencing guidelines appear to change the scope of those sentences that will be permitted under section 775.084, Florida Statutes (1989), it also has the effect of repealing that portion of section 775.084(4)(e) (now section 775.084(4)(h), Florida Statutes (2000)) which provides that a habitual offender sentence is not subject to the sentencing guidelines. Because the case before us involves only the imposition of a probationary sentence, Rinkins has no application and we need not discuss it further.
[3] Geohagen answered a certified question regarding McKnight v. State, 616 So.2d 31 (Fla. 1993). McKnight is subject to an interpretation that we believe to be erroneous but also to be widespread throughout our courts. Because we also believe that McKnight should be addressed and clarified by the supreme court, we offer the following interpretation for consideration. At first glance, the supreme court's opinion in McKnight can be read to hold that probation may be imposed as a habitual offender sentence. We conclude that such a reading is incorrect. We base this conclusion on the fact that although there are no facts set forth in the supreme court's opinion, our court's opinion in McKnight v. State, 595 So.2d 1059, 1059 (Fla. 2d DCA 1992), found no merit in McKnight's contention that it was error to impose probation in sentencing him "under the habitual offender statute." As authority for the finding of no merit, our court cited to King v. State, 597 So.2d 309 (Fla. 2d DCA) (en banc), review denied, 602 So.2d 942 (Fla.1992), disapproved in part by King v. State, 681 So.2d 1136, 1138, 1139 n. 8 (Fla.1996).

If the phrase "under the habitual offender statute" is read to mean that the probation was imposed as a habitual offender sentence, our finding of no error in McKnight, 595 So.2d 1059, would be contrary to the rationale of our en banc opinion in King. The supreme court approved our decision in McKnight and held that "the trial judge has the discretion to place an habitual felony offender on probation." McKnight, 616 So.2d at 31. As its basis for this holding, the supreme court expressly adopted the rationale of our en banc opinion in King. Because our rationale in King clearly prohibits a habitual offender sentence of probation, the supreme court's approval of our finding of no merit to McKnight's challenge to his sentence would be contrary to a conclusion that the probation imposed in McKnight was a habitual offender sentence. Therefore, we believe that the phrase "under the habitual offender statute" should be read to simply mean that the trial court was applying the habitual offender statute in the sentencing proceedings and that McKnight was found to be a habitual offender under the statute but the trial court elected, as permitted by the statute, to impose a guidelines sentence of probation, which is essentially the same fact scenario addressed in King.
In King, the defendant challenged the habitual offender sentence imposed after a revocation of community control by arguing that the initial sentence of community control was an illegal application of the habitual offender statute. Our court rejected this argument and concluded that "there is nothing inherently or per se illegal about a sentence of community control coupled with a determination that a defendant is an habitual felony offender." King, 597 So.2d at 313. We explained that such a sentence, however, would activate the guidelines procedures. Id. at 316. Thus our suggested interpretation today of the phrase "under the habitual offender statute" as used in our McKnight opinion is consistent with the supreme court's citation to King in its McKnight opinion.
We conclude that the confusion raised by the two McKnight opinions does not preclude our reaching the conclusion that a nonnegotiated habitual offender sentence of probation is never permissible because the supreme court, in Geohagen, once again acknowledged its adoption of our King rationale on the issue of placing a habitual offender on probation. However, it would be helpful if the supreme court would further clarify its holding in McKnight.
[4] In 1995, the legislature began requiring trial courts to provide written reasons for not imposing a habitual offender sentence in those cases where the trial court found that it was not necessary for the protection of the public. Ch. 95-182, § 2, Laws of Fla.