DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ANTHONY MCMILLAN,**
Petitioner,

v.

**STATE OF FLORIDA,**
Respondent.

No. 4D18-1161

[September 5, 2018]

Petition for writ of habeas corpus to the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Paul L. Backman, Judge; L.T. Case No. 97-14264CF10A.

Anthony McMillan, Florida City, pro se.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melynda L. Melear, Senior Assistant Attorney General, West Palm Beach, for respondent.

PER CURIAM.

Anthony McMillan has filed a habeas corpus petition challenging his life sentence imposed in 1999. McMillan claims he is entitled to be resentenced because the trial court erroneously believed it was required to impose a life sentence under the habitual violent felony offender (HVFO) statute. We agree and grant the petition.

McMillan was convicted by a jury of two counts of robbery with a firearm and one count of carjacking with a firearm, all first degree felonies punishable by life. §§ 812.13(2)(a), 812.133(2)(a), Fla. Stats. (1997). The State argued for an HVFO sentence and stated that "the mandatory is life as a violent felony offender." This was incorrect. Section 775.084(4)(b)1., Florida Statutes (1997), provides that the court *may* sentence an HVFO up to life with a fifteen-year mandatory minimum for a first degree felony. The trial court agreed with the State that an HVFO sentence was

appropriate and imposed three concurrent terms of life as a mandatory minimum.[1]

This Court affirmed McMillan's convictions and sentences on direct appeal. *McMillan v. State*, 763 So. 2d 1140 (Fla. 4th DCA 2000). He subsequently filed several unsuccessful postconviction motions. In one of those motions, he claimed he was entitled to be resentenced because the trial court erroneously believed it was required to impose a life sentence under the HVFO statute. The trial court denied the motion and this Court affirmed. *McMillan v. State*, 42 So. 3d 842 (Fla. 4th DCA 2010). McMillan raises the claim again in this habeas corpus petition.

We find it clear from the record that the trial court erroneously believed it was required to impose a life sentence under the HVFO statute, and we conclude that this is one of the very rare cases where it would be a manifest injustice not to grant habeas corpus relief. *See Prince v. State*, 98 So. 3d 768 (Fla. 4th DCA 2012) (granting habeas relief where the trial court erroneously believed it was required to impose a life sentence and the appellate court had failed to recognize the error in previous cases); *Johnson v. State*, 9 So. 3d 640 (Fla. 4th DCA 2009) (same); *see also Stephens v. State*, 974 So. 2d 455, 457-58 (Fla. 2d DCA 2008) (recognizing that an appellate court has inherent authority to grant a writ of habeas corpus to avoid "manifestly unfair results").

Accordingly, we grant the petition and direct the trial court to hold a new sentencing hearing. McMillan is entitled to be present and represented by counsel at resentencing.

*Petition granted.*

WARNER and GROSS, JJ., concur.
CONNER, J., dissents with opinion.

CONNER, J., dissenting.

I respectfully dissent for several reasons: (1) I do not agree the record supports a definitive conclusion that the trial court erroneously believed it was required to impose a life sentence under the habitual violent felony offender (HVFO) statute, but it is clear the trial judge would have imposed

---

[1] We note, although McMillan does not raise the issue, that the mandatory minimum terms of life are improper because the HVFO statute only provides for a mandatory minimum of fifteen years. *See* § 775.084(4)(b)1., Fla. Stat. (1997); *Stanley v. State*, 934 So. 2d 562, 563 (Fla. 4th DCA 2006).

a life sentence regardless; (2) as to the imposition of a life sentence, McMillan's rule 3.800(a) claim that the trial court erroneously believed it had to impose a life sentence is barred by collateral estoppel; and (3) in applying the manifest injustice exception to the collateral estoppel bar to post-conviction relief, the majority ignores our recent case law. To the extent any habeas corpus relief should be granted, it should only be to the extent of striking improper language from the written sentence imposing the length of the sentence as a mandatory minimum (thus cutting off the entitlement to gain time) McMillan is not entitled to the full panoply of rights for a new sentencing hearing.[2]

In July 1997, McMillan committed the three crimes charged in the instant case, two counts of armed robbery using a firearm and one count of carjacking using a firearm. As the majority acknowledges, all three crimes were first degree felonies punishable by life. McMillan had been released from prison for a prior armed robbery with a firearm just three years prior to committing the crimes in the instant case.

Although the majority believes the trial court's statement during sentencing that, "the appropriate sentence . . . is life . . . as a violent habitual offender. That is a mandatory sentence of life with credit for time for 595 days," is categorically a statement that the trial court believed it had to impose a life sentence once it determined McMillan qualified as a habitual violent felony offender, I contend the trial court's statement could also be a confused reference to the fact that a life sentence imposed on a habitual violent felony offender requires that the offender "shall not be eligible for release for 15 years," under section 775.084(4)(b)(1), Florida Statutes (1999). In my view, the trial court's other comments at sentencing clearly demonstrate its intention to sentence McMillan to life in prison as the appropriate sentence, whether mandatory or not.

Even if the majority is correct that the trial court was under the erroneous impression that it had to impose a life sentence once it determined that McMillan qualified for sentencing as a habitual violent felony offender, such does not necessarily mean that McMillan is entitled to a resentencing hearing. In my view, because a life sentence could legally be imposed, there was no manifest injustice as to the length of the sentence and rule 3.800(a) relief cannot be granted as to the *length* of the sentence. At most, the language that the life sentence was a "mandatory minimum" sentence is all that can be corrected.

---

[2] The written judgment and sentences imposed three concurrent life sentences, stating "I-III Life FSP cr 590 days ts as 'violent habitual offender' w/ life as min mand 3 yr min mand as to ct III ct's conc."

Rule 3.800(a)(2) clearly provides that "a court may dismiss a second or successive motion if the court finds that the motion fails to allege new or different grounds for relief and the prior determination was on the merits." Fla. R. Crim. P. 3.800(a)(2). A defendant should not be entitled to any greater post-conviction protection by an appellate court. *See Price v. State*, 692 So. 2d 971, 971 (Fla. 2d DCA 1997) (noting that "a defendant is not entitled to successive review of a specific issue which has already been decided against him"). Rule 3.800(a)(2) is simply a codification of the doctrine of collateral estoppel. Clearly, collateral estoppel applies as a bar in this case, since McMillan raised the same issue in this habeas corpus petition that he raised in a prior 3.800(a) appeal, which was denied on the merits. *See McMillan v. State*, 42 So. 3d 842 (Fla. 4th DCA 2010).

The majority concludes that McMillan's habeas petition presents "one of the very rare cases where it would be a manifest injustice not to grant habeas corpus relief," citing *Prince v. State*, 98 So. 3d 768 (Fla. 4th DCA 2012), *Johnson v. State*, 9 So. 3d 640 (Fla. 4th DCA 2009), and *Stephens v. State*, 974 So. 2d 455 (Fla. 2d DCA 2008).

*Prince* is simply not binding or even persuasive authority for the instant case because it is significantly factually different. There, the trial court imposed a life sentence and clearly stated it was "required" to do so. *Prince*, 98 So. 3d at 770. While Prince's direct appeal was pending, our supreme court issued an opinion determining that the habitual offender statute could not operate as an alternative to the sentencing guidelines. *Id.* Thus, *Prince* was a "pipeline" case involving a change in the law. *See State v. Brown*, 655 So. 2d 82, 84 (Fla. 1995) (explaining that "pipeline" cases are those cases not yet final at the time the law changed and to which the change in the law applies retrospectively). In discussing the application of the manifest injustice exception to the collateral estoppel bar in *Prince*, we relied on *Johnson* and *Stephens*, which is problematic, as will be discussed shortly. *Prince*, 98 So. 3d at 770-71. Importantly, though, the "various factors in the record which would support a sentence significantly less than life in prison" found in *Prince*, *id.* at 771, are simply not present in the instant case.

The problem with *Johnson* is the concession in the first paragraph of the opinion that "[t]echnically the sentence [under review] is not an illegal sentence." *Johnson*, 9 So. 3d at 640-41. Interestingly, in a footnote, the *Johnson* panel observed that a "[habitual felony sentence] is correctable as illegal sentence under rule 3.800(a) only where [the habitual felony offender] statute in effect at sentencing did not authorize [a habitual felony offender sentence] for life felonies." *Id.* at 641 n.1. If the sentence in *Johnson* was not illegal, one wonders how the panel in that case could

4

grant rule 3.800(a) review and relief. A close reading suggests the panel in *Johnson*, like the Second District panel in *Stephens*, felt embarrassed that this Court did not properly recognize the validity of Johnson's claim in a previous appeal, even though the state did not object to the relief requested. *See id.* at 642. Additionally, we had granted similar relief for the same grounds in other cases. *Id.* ("We agree that it is a manifest injustice to deny him the same relief afforded other defendants identically situated.").

Similar to *Johnson*, the panel in *Stephens* concluded a prior appellate decision in the case was based on an erroneous understanding of the record, thus leaving the litigants puzzled about why the case had been remanded back to the trial court to address a *Heggs*[3] issue. *Stephens*, 974 So. 2d at 457. Because the remand instructions directed the parties to consider the wrong issue, Stephens was deprived of a real opportunity to have his sentence reconsidered. *Id.* Acknowledging that it had led the parties down the wrong path previously, the Second District felt the situation presented a rare circumstance of manifest injustice. *Id.* at 457-58.

Although it is laudable that appellate courts are willing to admit their errors in past appeals, the majority's reliance on *Prince*, *Johnson*, and *Stephens* cannot be squared with other case law discussing the scope of rule 3.800(a) relief in the context of enhanced punishment of repeat offenders. Additionally, the viability of the concept of "manifest injustice" espoused by *Prince*, *Johnson*, and *Stephens* cannot be squared with more recent case law discussing the concept.

In *Carter v. State*, 786 So. 2d 1173 (Fla. 2001), the supreme court discussed the evolving definition of "illegal sentence" as it applies to rule 3.800(a) relief. *Id.* at 1176-78. Carter, who was convicted of a life felony, received a habitual offender sentence, when the version of section 775.084 in effect at the time of sentencing did not permit habitualization for life felonies. *Id.* at 1180. The supreme court concluded he was entitled to rule 3.800(a) relief because the terms and conditions of his habitual offender sentence were illegal, as a matter of law, because they exceed those authorized by statute for the underlying offense of second-degree murder with a weapon. *Id.* In granting relief, the court approved the definition of "illegal sentence" that we announced in *Blakley v. State*, 746 So. 2d 1182 (Fla. 4th DCA 1999), as a sentence which "imposes a kind of punishment that no judge under the entire body of sentencing statutes could possibly

---

[3] *Heggs v. State*, 759 So. 2d 620 (Fla. 2000).

inflict under any set of factual circumstances." *Carter*, 786 So. 2d at 1181 (quoting *Blakley,* 746 So. 2d at 1187). The supreme court has continued to approve the definition as recently as 2014 and 2017. *See Plott v. State*, 148 So. 3d 90, 93 (Fla. 2014); *Martinez v. State*, 211 So. 3d 989, 991 (Fla. 2017).

In *Brooks v. State*, 969 So. 2d 238 (Fla. 2007), the supreme court made it clear that the appropriate harmless error test to be applied to rule 3.800(a) relief is the "could-have-been-imposed" standard. *Id.* at 243. In *Martinez v. State*, 216 So. 3d 734 (Fla. 4th DCA 2017), we recognized that in determining whether the manifest injustice exception to the bar of collateral estoppel applies, the harmless error standard for rule 3.800(a) relief adopted in *Brooks* should be considered. *Id.* at 739 ("The application of the manifest injustice exception in this case comports with the harmless error analysis to be applied in analyzing rule 3.800(a) relief."). Additionally, we said:

> Manifest injustice occurs **only** when the application of collateral estoppel would result in the defendant serving a longer illegal sentence than a restructured legal sentence imposed upon remand.

*Id.* at 740 (emphasis in original). Clearly, if we were to remand the instant case for resentencing, the trial court could legally re-impose a life sentence. Thus, in terms of the imposition of a life sentence, there is no manifest injustice, and rule 3.800(a) relief is not appropriate.

To the extent the trial court imposed the life sentence for each count *as a mandatory minimum*, it was error, because such is a "punishment that no judge under the entire body of sentencing statutes could possibly inflict under any set of factual circumstances." Instead, section 775.084(4)(b)(1), Florida Statute (2018), clearly provides, *with no discretion*, that for each life sentence, McMillan will not be eligible for release earlier than fifteen years. Thus, this case presents a situation in which the sentencing error can be rectified by the ministerial act of the trial court correcting the written judgment and sentences to delete the reference to the life sentences as mandatory minimums. *See Jordan v. State,* 143 So. 3d 335, 339 (Fla. 2014) (explaining that the right of presence at sentencing does not exist where the resentencing "concerns issues that are purely ministerial in nature" (quoting *Acosta v. State*, 46 So. 3d 1179, 1180 (Fla. 2d DCA 2010)); *Orta v. State,* 919 So. 2d 602, 604 (Fla. 3d DCA 2006); *Frost v. State*, 769 So. 2d 443, 444 (Fla. 1st DCA 2000); *Williams v. State,* 697 So. 2d 584 (Fla. 4th DCA 1997).

This case highlights the concern we expressed in *Martinez*:

> Where a defendant has been sentenced on multiple charges, there must come a time in which a facially illegal sentence must stand, even under rule 3.800(a). After multiple failed attempts at redress . . . the sentence should stand so long as it is legally permissible on resentencing to reimpose the same total years received, using some combination of concurrent and consecutive legal sentences.

*Martinez*, 216 So. 3d at 740. Additionally, we said:

> Resentencing, however, is never "simple" for the victim or the victim's family, particularly where the crime resulted in death or severe emotional or physical trauma. If finality means anything, it means putting an end to the reopening of old wounds. Our judicial system is not designed to achieve perfection; it is designed to achieve fairness.

*Id.* The manifest injustice exception espoused by the majority improperly expands the narrow reach of rule 3.800(a) relief when it allows a trial court, decades later, to resentence and impose less than a life sentence, where the original imposition of a life sentence was legal. Where the trial court elects not to impose less than a life sentence on resentencing, the application unnecessarily reopens old wounds.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***