# Supreme Court of Florida

_____

No. SC2023-1184
_____

**MARCUS ROLAND MAYE,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

May 14, 2026

FRANCIS, J.

Marcus Roland Maye, a prisoner serving a minimum mandatory life sentence[1] under Florida's Prison Releasee Reoffender (PRR) statute, section 775.082(9), Florida Statutes (2002),[2] challenged the constitutionality of the PRR statute's procedures by

---

    1.  Maye committed robbery with a deadly weapon in May 2002.

    2.  *See* § 775.082(9)(a)1., Fla. Stat. (2002) (" 'Prison releasee reoffender' means any defendant who commits, or attempts to commit . . . [a qualifying offense, including robbery] . . . within 3 years after being released from a state correctional facility operated by the Department of Corrections . . . following incarceration for an offense for which the sentence is punishable by more than 1 year in this state.").

filing a Florida Rule of Criminal Procedure 3.800(a) motion to correct an illegal sentence in circuit court. In his motion, Maye argued that the PRR statute was unconstitutional both facially and as applied under *Apprendi*[3] and its progeny, *Alleyne*,[4] because under the statute's language, a judge rather than a jury makes the finding exposing a defendant to a minimum mandatory sentence. *See* § 775.082(9)(a)3., Fla. Stat. (providing that once the "state attorney determines that a defendant is a [PRR] . . . the state attorney may seek to have *the court* sentence the defendant as a [PRR]" based on proof meeting a preponderance of the evidence (emphasis added)).

The State opposed the motion on two grounds, arguing, first, that rule 3.800(a) is not the proper vehicle for challenging the constitutionality of a statute, and, second, that binding district

---

3. *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (holding that, except for the fact of a prior conviction, any fact that increases the sentence for an offense beyond the statutory maximum is an "element" of the offense that must be submitted to a jury and found beyond a reasonable doubt).

4. *Alleyne v. United States*, 570 U.S. 99 (2013) (extending *Apprendi* to any fact that increases the mandatory minimum sentence for an offense).

court precedent required the denial of Maye's constitutional claim on the merits.

Recognizing that binding precedent[5] held section 775.082(9) to be constitutionally valid, the circuit court denied Maye's motion, and the Sixth District Court of Appeal affirmed on this basis. *See Maye v. State*, 368 So. 3d 531, 532 (Fla. 6th DCA 2023).

We approve the result of the Sixth District's decision[6] and hold that rule 3.800(a) is *not* the proper vehicle for raising a claim of error under *Apprendi* and its progeny, including *Alleyne* ("*Apprendi* claims").[7] In so holding, we recede from *Plott v. State*, 148 So. 3d 90 (Fla. 2014), and its contrary holding that an *Apprendi* claim is cognizable under rule 3.800(a).

---

5. *See Simmons v. State*, 332 So. 3d 1129 (Fla. 5th DCA 2022). In 2023, the Sixth District came into being, and Maye's appeal was transferred from the Fifth District Court of Appeal to the Sixth District.

6. We have jurisdiction. *See* art. V, § 3(b)(3), Fla. Const.

7. "Whether a claim of error may be raised in a motion to correct illegal sentence under rule 3.800(a) is a pure question of law subject to de novo review." *Martinez v. State*, 211 So. 3d 989, 991 n.4 (Fla. 2017) (citing *Saintelien v. State*, 990 So. 2d 494, 496 (Fla. 2008)).

# I

## A

Rule 3.800(a)(1) provides an extraordinary remedy that permits a challenge to either (i) an illegal sentence or (ii) an incorrectly calculated scoresheet at *any time* after the sentence is imposed regardless of whether any error was ever previously raised or preserved for appellate review. *See* Fla. R. Crim. P. 3.800(a)(1) ("A court may *at any time* correct an illegal sentence imposed by it, or an incorrect calculation made by it in a sentencing scoresheet, when it is affirmatively alleged that the court *records* demonstrate *on their face* an entitlement to that relief, provided that a party may not file a motion to correct an illegal sentence under this subdivision during the time allowed for the filing of a motion under subdivision (b)(1) or during the pendency of a direct appeal." (emphasis added)).[8]

---

8. Rule 3.800(b) provides procedures by which a defendant may seek a post-trial correction of an error in a sentencing order pending appeal so that the error can be corrected by the trial court at the earliest opportunity, or, if denied, be preserved and raised for review on appeal.

At issue here is the first type of challenge under rule 3.800(a)(1): a challenge to an illegal sentence.

Because a claim of illegal sentence may be raised at any time,[9] significant limitations on the use of rule 3.800(a)(1) appear in the text of the rule itself: the error must appear on the face of the record *and* must demonstrate an *illegal sentence.  See* Fla. R. Crim. P. 3.800(a)(1).[10]

We have defined an "illegal sentence"—which is not expressly defined in rule 3.800(a)—as "one that no judge under the entire body of sentencing laws could possibly impose." *Martinez v. State*, 211 So. 3d 989, 991 (Fla. 2017) (quoting *Wright v. State*, 911 So. 2d 81, 83 (Fla. 2005)).  Under this definition, courts have found that

---

9.  There is no time limit to challenge an illegal sentence because an illegal sentence cannot be waived.  *See Maddox v. State*, 760 So. 2d 89, 100 n.8 (Fla. 2000) ("[C]learly the class of errors that constitute an 'illegal' sentence . . . can be raised for the first time in a postconviction motion decades after a sentence becomes final . . . .").

10.  *See also Brooks v. State*, 969 So. 2d 238, 242 (Fla. 2007) ("The good news is that . . . [rule 3.800(a) motions] may be raised 'at any time.'  The bad news is that, because the error may be raised at any time, no evidentiary hearing is allowed.  Instead, both the error and the defendant's entitlement to relief must be evident from the face of the record and the applicable law." (footnote omitted)).

where the face of the record reflects a sentence could have been imposed within the body of our applicable sentencing laws, it is not illegal for purposes of rule 3.800(a)(1). *See, e.g., Birdsong v. State*, 399 So. 3d 360, 361 (Fla. 1st DCA 2024) ("A claim that the trial court improperly departed from the recommended sentencing guidelines may not be brought pursuant to [rule 3.800(a)] if the departure sentence is within the legal maximum because it does not constitute an illegal sentence." (alteration in original) (quoting *Acosta v. State*, 103 So. 3d 234, 235-36 (Fla. 3d DCA 2012))), *review dismissed*, No. SC2024-1855, 2024 WL 5233214 (Fla. Dec. 27, 2024).

In the past, we also formulated the definition of an "illegal sentence" more broadly, as one that "patently fails to comport with statutory or constitutional limitations." *State v. Mancino*, 714 So. 2d 429, 433 (Fla. 1998); *Plott*, 148 So. 3d at 95 (citing and relying on this definition in *Mancino*). *But see Carter v. State*, 786 So. 2d 1173, 1177 (Fla. 2001) ("[I]t appears that our newly formulated definition [of an illegal sentence] in *Mancino* may be overly broad."). This broad definition of an illegal sentence was the one utilized in *Plott*.

- 6 -

But under any definition, *Apprendi* claims are an unnatural fit as an "illegal sentence" claim under rule 3.800(a)(1) because it is well established that *Apprendi* claims are subject to harmless error review under Florida law. *See Galindez v. State*, 955 So. 2d 517, 521 (Fla. 2007) (holding that when raised on direct appeal, *Apprendi* errors are subject to harmless error analysis); *Plott*, 148 So. 3d at 95 (remanding in part for harmless error review under *Galindez*). It is equally well established that *Apprendi* claims are subject to harmless error review under federal law. *See Washington v. Recuenco*, 548 U.S. 212, 222 (2006) (holding that errors under *Apprendi*'s progeny, *Blakely v. Washington*, 542 U.S. 296 (2004), are subject to harmless error review); *United States v. King*, 751 F.3d 1268, 1279 (11th Cir. 2014) ("We have consistently held that *Apprendi* violations are subject to harmless error analysis.").

In fact, in 2007, we adopted a harmless error test for alleged sentencing errors raised in a rule 3.800(a) motion in *Brooks*, 969 So. 2d at 243. That test asks whether the sentence that was imposed *could have been* imposed using a correct sentencing scoresheet. *Id.* If the same sentence could have been imposed, then any error is harmless. While *Brooks* was specifically

addressing the second category of errors that may be raised under rule 3.800(a), scoresheet errors, as a matter of logic, if a sentence *could have been* imposed under Florida law, it cannot meet the definition of an "illegal sentence" set out above: i.e., "one that no judge under the entire body of sentencing laws could possibly impose." *Martinez*, 211 So. 3d at 991 (quoting *Wright*, 911 So. 2d at 83).

Despite recognizing that *Apprendi* claims are subject to harmless error review, *Plott* held that *Apprendi* claims may be raised at any time in a rule 3.800(a) motion to correct an illegal sentence. The *Plott* decision reached this conclusion by relying on the more broadly formulated definition of "illegal sentence" under *Mancino*— one that "patently fails to comport with statutory or constitutional limitations." *Mancino*, 714 So. 2d at 433; *Plott*, 148 So. 3d at 95 ("[W]e hold that upward departure sentences that are unconstitutionally enhanced in violation of *Apprendi* . . . patently fail to comport with constitutional limitations, and consequently, the sentences are illegal under rule 3.800(a). . . . [C]laims of error under *Apprendi* . . . are cognizable in a rule 3.800(a) motion . . . ."). *Plott* then remanded the rule 3.800(a) motion at issue to the lower

court for a determination of whether the *Apprendi* claim raised there may be deemed harmless. 148 So. 3d at 91.

## B

We accept the State's invitation to reevaluate *Plott.* In so doing, we conclude that by overstating what types of sentences are illegal, *Plott* reached the incompatible result of permitting *Apprendi* claims that are subject to harmless error review to be raised as claims of "illegal sentences."

"We have recognized that few claims raised under rule 3.800(a) 'come within the illegality contemplated by the rule.'" *Martinez,* 211 So. 3d at 991 (quoting *Wright,* 911 So. 2d at 83). "For example, in *Wright,* we held that a trial court's failure to provide written reasons for retaining jurisdiction over a defendant's sentence did not constitute an illegal sentence subject to correction under the rule." *Id.* (citing *Wright,* 911 So. 2d at 82). This was so in *Wright* "because the error was not one involving 'a court's patent lack of authority or jurisdiction, a violation of the sentencing maximums provided by the Legislature, or a violation of some other fundamental right resulting in a person's wrongful imprisonment.'" *Id.* at 991-92 (quoting *Wright,* 911 So. 2d at 84). "By comparison,

- 9 -

we have held that a sentence that has been unconstitutionally enhanced in violation of the double jeopardy clause is illegal and, therefore, may be corrected under rule 3.800(a)." *Id.* at 992 (citing *Hopping v. State*, 708 So. 2d 263, 265 (Fla. 1998)). *Plott* recognized that *Apprendi* error claims are subject to harmless error review. And there lies the tension: *Plott* does not explain how an error— even one that is constitutional in nature—can both be subject to harmless error review but also constitute an illegal sentence. This is significant because if an alleged sentencing error is potentially harmless and the ultimate sentence could have been imposed, how can it also be illegal on the face of the record? For purposes of the first category of alleged sentencing errors under rule 3.800(a), illegal sentences, we have a hard time conceiving of any error that is both illegal in nature and subject to harmless error review.

Because *Apprendi* claims are subject to harmless error review under both Florida and federal precedent, *Apprendi* errors are not the type of claims of "illegal sentence" contemplated by and cognizable under the first category ("illegal sentences") in a rule 3.800(a)(1) motion, i.e., claims "involving 'a court's patent lack of authority or jurisdiction, a violation of the sentencing maximums

provided by the Legislature, or a violation of some other fundamental right resulting in a person's wrongful imprisonment.' " *Id.* at 991-92 (quoting *Wright*, 911 So. 2d at 84).

Moreover, well before *Plott* was decided, we said that *Apprendi* errors must be preserved. *McGregor v. State*, 789 So. 2d 976, 977 (Fla. 2001); *Galindez*, 955 So. 2d at 521. *Plott* does not address this issue or grapple with how an error that is subject to preservation could ever constitute an illegal sentence that, by the rule's own text, is subject to correction at any time. *See Carter*, 786 So. 2d at 1176 ("[R]ule 3.800(a) vests trial courts with the broad authority to correct an illegal sentence without imposing a time limitation on the ability of defendants to seek relief."); *Martinez*, 211 So. 3d at 991 (citing *Carter*).

Thus, we conclude that *Plott* is in tension with both Florida and federal precedent and must fall.[11]

## C

"[O]nce we have chosen to reassess a precedent and have

---

11.  See for example *Hicks v. State*, 422 So. 3d 607, 609-10 (Fla. 2d DCA 2025) (Winokur, J., concurring), where Judge Winokur offers a thoughtful concurring opinion highlighting such tension.

come to the conclusion that it is clearly erroneous, the proper question becomes whether there is a valid reason *why not* to recede from that precedent." *State v. Poole*, 297 So. 3d 487, 507 (Fla. 2020). "The critical consideration ordinarily will be reliance," which is at its "lowest in cases—like this one—'involving procedural and evidentiary rules.'" *Id.* (citing *Payne v. Tennessee*, 501 U.S. 808, 828 (1991), and *Alleyne*, 570 U.S. at 119 (Sotomayor, J., concurring)). "[W]hen procedural rules are at issue that do not govern primary conduct and do not implicate the reliance interests of private parties, the force of *stare decisis* is reduced." *Alleyne*, 570 U.S. at 119 (Sotomayor, J., concurring).[12]

---

12. In *Alleyne*, the United States Supreme Court overruled its precedent in *Harris v. United States*, 536 U.S. 545 (2002), which was the law at the time Maye was sentenced. In *Harris*, the Supreme Court declined to extend *Apprendi* to findings required for imposing a mandatory minimum sentence that do not also increase the maximum penalty. *Id.* at 565-67. In 2013, the Supreme Court overruled *Harris* in *Alleyne*, holding that *Apprendi* requires that a jury must find beyond a reasonable doubt facts required to impose even a mandatory minimum sentence, except for the fact of a prior conviction. 570 U.S. at 103, 111 n.1. Justice Sotomayor's concurrence recognizes that *Alleyne* involved a procedural change, meaning the government's reliance interest on the *Harris* decision was not high.

Reliance interests on *Plott* are at their lowest here because its central holding expands rule 3.800(a), a rule of criminal postconviction procedure that does not govern a criminal defendant's primary conduct at trial.  *See Martinez*, 211 So. 3d at 992.  And the interests of private parties are not implicated here.  Therefore, we recede from *Plott.*

## II

Because *Apprendi* claims are subject to harmless error review, they are not the type of "illegal sentence" claim cognizable in a rule 3.800(a) motion.  We therefore recede from *Plott,*[13] conclude that

---

13.  Were Maye's challenge to the PRR statute properly raised, the State concedes that Florida's PRR statute is unconstitutional under the Supreme Court's decision in *Erlinger v. United States*, 602 U.S. 821 (2024), which was released during the pendency of this case.  However, we need not reach that issue, or the dissent's analysis, today because, as we already explained, there is another, nonconstitutional ground supported by the record upon which we approve and affirm the Sixth District's decision.  *See In re Holder*, 945 So. 2d 1130, 1133 (Fla. 2006) ("[W]e have long subscribed to a principle of judicial restraint by which we avoid considering a constitutional question when the case can be decided on nonconstitutional grounds."); *see also Coates v. R.J. Reynolds Tobacco Co.*, 375 So. 3d 168, 170 (Fla. 2023) (citing *Holder*, 945 So. 2d at 1133).  Furthermore, we recently held that *Erlinger* is not retroactive.  *See Wainwright v. State*, 411 So. 3d 392, 401 (Fla.), *cert. denied*, 145 S. Ct. 2789 (2025).

Maye's *Apprendi* claim is not cognizable in a rule 3.800(a) motion, and approve the result of the Sixth District's decision on this alternative basis.

It is so ordered.

MUÑIZ, C.J., and COURIEL and SASSO, JJ., concur.
GROSSHANS, J., concurs with an opinion.
FRANCIS, J., specially concurs with an opinion.
LABARGA, J., dissents with an opinion.
TANENBAUM, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

GROSSHANS, J. concurring.

I join the opinion of the Court concluding that *Apprendi* errors are not cognizable under rule 3.800(a) of the Florida Rules of Criminal Procedure. I write separately to underscore some additional points about rule 3.800(a)'s context and why, in my view, harmless error is doctrinally incompatible with the concept of an "illegal sentence."

Ordinarily, claims of trial-court error must be raised, if at all, on direct review of a judgment and sentence. *Bruno v. State*, 807 So. 2d 55, 63 & n.13 (Fla. 2001); *Lamb v. State*, 212 So. 3d 1108, 1111 n.8 (Fla. 5th DCA 2017); *Arteaga v. State*, 246 So. 3d 533, 536

- 14 -

(Fla. 2d DCA 2018).  If a defendant does not succeed in obtaining a reversal on direct review (or if no appeal is taken), the judgment and sentence become final.  *Anton v. State*, 976 So. 2d 6, 9 (Fla. 2d DCA 2008); *Armstrong v. State*, 148 So. 3d 127, 128 (Fla. 2d DCA 2014).  Upon finality, a defendant's ability to obtain relief is substantially reduced.  *Thompson v. State*, 990 So. 2d 482, 489 (Fla. 2008).  Indeed, our procedural rules provide limited avenues for seeking postconviction (i.e., post-finality) relief.

One option is found in Florida Rule of Criminal Procedure 3.850.  This rule recognizes six grounds for relief, Fla. R. Crim. P. 3.850(a)(1)-(6), including that either the judgment or sentence violates "the Constitution or laws of the United States or the State of Florida," Fla. R. Crim. P. 3.850(a)(1).  It also affords relief if the defendant's sentence "exceed[s] the maximum authorized by law." Fla. R. Crim. P. 3.850(a)(4).  Notably, though, a defendant has only a two-year window for raising claims under this rule, unless an exception applies.  Fla. R. Crim. P. 3.850(b).

Another option at the postconviction stage is to advance a sentence-only challenge under the authority of rule 3.800.  As relevant to this case, rule 3.800(a) authorizes a court to "correct" an

"illegal sentence" imposed by it. In contrast with the time restrictions found in rule 3.850, rule 3.800(a) permits correction of illegal sentences "at any time." Fla. R. Crim. P. 3.800(a). Moreover, this type of claim is not subject to the same array of procedural bars or preservation requirements that apply in other contexts. *Cf.* Fla. R. Crim. P. 3.850(c), (j). Absent these hurdles, rule 3.800(a) can be seen as relaxing finality principles to the extent necessary to "ensur[e] that criminal defendants do not serve sentences imposed contrary to the requirements of law." *Carter v. State*, 786 So. 2d 1173, 1176 (Fla. 2001).

Rule 3.800(a) does not define "illegal sentence," leaving significant work for the courts in determining its meaning and scope. I think it is fair to say that we have struggled to find one uniform standard that applies across the board. *Cf. State v. McMahon*, 94 So. 3d 468, 480 (Fla. 2012) (Canady, C.J., dissenting) (discussing lack of consistency in rule 3.800(a) context). For instance, we have said that an illegal sentence is "one that no judge under the entire body of sentencing laws could possibly impose." *Martinez v. State*, 211 So. 3d 989, 991 (Fla. 2017) (quoting *Wright v. State*, 911 So. 2d 81, 83 (Fla. 2005)). We have likewise said that a

sentence is illegal under rule 3.800(a) where, on its face, it "patently fails to comport with statutory or constitutional limitations." *State v. Mancino*, 714 So. 2d 429, 433 (Fla. 1998). And in a similar vein, we have indicated that a sentence is illegal where "the terms or conditions of the punishment for a particular offense are impermissible as a matter of law." *Carter*, 786 So. 2d at 1181 (quoting *Young v. State*, 716 So. 2d 280, 282 (Fla. 2d DCA 1998)).

Whatever might be said of the compatibility and workability of these formulations, I think they convey that an illegal sentence means something more than mere legal error. Our cases confirm this point. Indeed, over the last thirty years, we have found that few errors meet rule 3.800(a)'s illegality standard. *E.g.*, *Davis v. State*, 661 So. 2d 1193, 1196 (Fla. 1995) (sentence that exceeds the maximum period set forth by law for an offense without regard to the guidelines); *Hopping v. State*, 708 So. 2d 263, 265 (Fla. 1998) (double-jeopardy violation for "unconstitutional enhancement" of sentence); *Mancino*, 714 So. 2d at 433 (failure to award statutorily required credit time where "record reflects that a defendant has served time prior to sentencing on the charge for which he was tried and convicted"); *Carter*, 786 So. 2d at 1180 (improper

habitualization for life felonies was not authorized by any law); *Bover v. State*, 797 So. 2d 1246, 1251 (Fla. 2001) ("[W]e conclude that the adjudication of a defendant as a habitual offender when the requisite sequential felonies do not exist may be corrected as an illegal sentence pursuant to rule 3.800(a) so long as the error is apparent from the face of the record."); *Mack v. State*, 823 So. 2d 746, 751 (Fla. 2002) (habitualization upon revocation of probation where the defendant "was not initially sentenced as an habitual offender"); *Saintelien v. State*, 990 So. 2d 494, 497 (Fla. 2008) (sexual-predator designation may be challenged by way of rule 3.800(a) when the designation error is apparent from the face of the record); *State v. Akins*, 69 So. 3d 261, 272 (Fla. 2011) (double-jeopardy violation due to habitualization of defendant following violation of probation where defendant was not initially punished as habitual offender).

What do these errors have in common? In each of these cases, the errors were incurable. By that, I mean that the sentence at issue could not have been lawfully imposed on the unchallenged record. No additional proceedings, modifications, or findings could have salvaged the sentence and brought it into conformity with

statutory or constitutional requirements. It is not surprising, then, that we did not undertake any sort of harmless-error review.[14]

These observations align with distinctions that we have drawn among the concepts of illegal sentences, fundamental error, and harmless error. We have said that an error is harmless if there is no reasonable possibility that it affected the verdict, sentence, or the defendant's substantial rights. *See State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986) (guilt context); *Sexton v. State*, 402 So. 3d 270, 280 (Fla. 2024) (sentencing context); § 924.33, Fla. Stat. (2025) ("No judgment shall be reversed unless the appellate court is of the opinion, after an examination of all the appeal papers, that

---

14. Scoresheet-error claims, though also authorized by 3.800(a), are separate and distinct from claims of an illegal sentence and should be viewed as such. Fla. R. Crim. P. 3.800(a) ("A court may at any time correct an illegal sentence imposed by it, *or* an incorrect calculation made by it in a sentencing scoresheet . . . ." (emphasis added)). In the context of scoresheet error, we have denied relief if the sentence "could have been imposed." *Brooks v. State*, 969 So. 2d 238, 243 (Fla. 2007) ("Accordingly, for motions filed under rule 3.800(a), we hold that if the trial court could have imposed the same sentence using a correct scoresheet, any error was harmless."). I accept this reasoning in the scoresheet-error context. But it does not follow that the same analysis carries over to the very different concept of "illegal sentences." Thus, *Brooks* does not alter my view that truly illegal sentences are not compatible with the concept of harmless error.

error was committed that injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant.").

But a fundamental error is different in that it is, by definition, harmful. *See Jackson v. State*, 983 So. 2d 562, 576 (Fla. 2008) ("By its very nature, fundamental error has to be considered harmful." (quoting *Reed v. State*, 837 So. 2d 366, 370 (Fla. 2002))). For this reason, we have reasoned that "[f]undamental error is not subject to harmless error review." *Id.* (quoting *Reed*, 837 So. 2d at 369-70).

We have also recognized that a fundamental sentencing error is not necessarily on par with an illegal sentence. *Maddox v. State*, 760 So. 2d 89, 100 n.8 (Fla. 2000) ("[C]learly the class of errors that constitute an 'illegal' sentence that can be raised for the first time in a postconviction motion decades after a sentence becomes final is a narrower class of errors than those termed 'fundamental' errors that can be raised on direct appeal even though unpreserved."); *State v. Garcia*, 346 So. 3d 581, 585 (Fla. 2022) (characterizing illegal sentences as a subset of those sentencing errors that are fundamental). After all, it is well established that a fundamental error can be invited and therefore waived. *Baptiste v. State*, 324 So.

3d 453, 456 (Fla. 2021). But the same cannot be said of an illegal sentence. Indeed, the district courts have routinely found that even a negotiated sentence may still be illegal under rule 3.800(a). *See Bruno v. State*, 837 So. 2d 521, 523 (Fla. 1st DCA 2003); *McLendon v. State*, 279 So. 3d 307, 309 (Fla. 1st DCA 2019).

In light of these three distinct concepts, it is clear that an error capable of being harmless is categorically different than an illegal sentence, which is always unauthorized and prejudicial. Thus, I agree with the majority's conclusion that a sentencing error subject to harmless-error review does not qualify as an illegal sentence under rule 3.800(a), *Plott* was incorrectly decided, and Maye's *Apprendi* claim cannot succeed.

FRANCIS, J., specially concurring.

There's another good reason to recede from *Plott v. State*, 148 So. 3d 90 (Fla. 2014), and conclude that Maye's claim is not cognizable in a rule 3.800(a) motion: his challenge is impermissibly directed at the sentencing *process*, not the *sentence* imposed.

Though ignored by *Plott*, this Court thoroughly discussed the distinctions between the *what*—the sentence imposed—and the *how*—the process *leading to* the sentence—in *Jackson v. State*, 983

So. 2d 562 (Fla. 2008).  And we did so in the context of considering

rule 3.800(a)'s neighboring subdivision, rule 3.800(b), and its

procedure for correcting and preserving errors in the sentencing

order pending appeal.[15]

*Jackson* explained that an unpreserved claim of error in the

sentencing *process*, even one of constitutional magnitude—there,

the partial denial of counsel during sentencing—must be raised on

direct appeal as a claim of fundamental error and cannot be

preserved after trial through a rule 3.800(b) motion to correct the

sentence.  983 So. 2d at 574 ("Having concluded that a claim of

denial of counsel at sentencing is not a 'sentencing error' subject to

rule 3.800(b), we apply the general rule that an unpreserved error

may be considered on appeal only if the error is fundamental.").

Even a constitutional claim concerning the denial of counsel is a

claim aimed at the *process* leading to the sentence; it is not an error

in the sentence imposed.  *Id.* ("A claim of denial of counsel at

---

15.  *See* majority op. at 4 note 8 (noting the purpose of rule 3.800(b)).

- 22 -

sentencing, however, is an error in the sentencing process, *not* an error in the sentencing order.").

We recognized this principle, post-*Plott*, in *Martinez v. State*, 211 So. 3d 989 (Fla. 2017), stating that rule 3.800(a) is intended to challenge the sentence imposed, not to challenge "the *procedure* that led to the imposition of [a] mandatory minimum sentence." *Id.* at 992 (emphasis added) (holding that alleged lack of notice in the information was an alleged error in the process that led to the sentence, not an error in the sentence itself for purposes of rule 3.800(a)).

Here, Maye claims that the PRR statute violates *Apprendi* and its progeny, *Alleyne*, because the statute authorizes the trial court rather than a jury to make the finding that exposed him to a minimum mandatory sentence. But Maye's claim is, ultimately, a challenge to the *how*—the *procedure* required by the PRR statute— not a challenge to the *what*—the legality of Maye's mandatory life sentence.[16] So I would additionally hold that Maye cannot use a

---

16. Judge Winokur recognized and thoughtfully addressed the sentence error versus sentencing process error distinction in his concurring decision in *Hicks v. State*, 422 So. 3d 607, 609-10 (Fla.

3.800(a) motion to challenge his sentencing *process*, and because *Plott* ignored this important distinction (sentence imposed versus sentencing process), it should be receded from on this basis as well.

Finally, Maye's mandatory life sentence is clearly not illegal from the face of the limited record before us because the sentence "could have been imposed." Regardless of whether he qualified for PRR sentencing, Maye's maximum liability exposure for his underlying conviction was a life sentence. *See* § 812.13(2)(a), Fla. Stat. (2002) (requiring that robbery committed while carrying a firearm or other deadly weapon be punished by "imprisonment for a term of years not exceeding life imprisonment"). And he is required to serve the entire sentence under our criminal punishment code. *See* § 944.275(4)(b)3., Fla. Stat. (2002) ("State prisoners sentenced to life imprisonment shall be incarcerated for the rest of their natural lives, unless granted pardon or clemency."). So even if Maye's 3.800(a) motion had challenged the actual sentence rather than the process, his mandatory life sentence is clearly not illegal on its face, and today's decision correctly rejects his claim.

---

1st DCA 2025) (Winokur, J., concurring).

LABARGA, J., dissenting.

*Apprendi*,[17] *Alleyne*,[18] and *Erlinger*[19] collectively embrace the essential principle of our constitutional democracy that no person convicted of a crime should serve a day of imprisonment longer than the maximum sentence prescribed by the criminal statute governing the crime he or she committed—unless supported by the factual determination of a unanimous jury. As underscored by Justice Scalia in his concurrence in *Apprendi*, "the criminal will never get *more* punishment than he bargained for when he did the crime, and his guilt of the crime (and hence the length of the sentence to which he is exposed) will be determined *beyond a reasonable doubt by the unanimous vote of 12 of his fellow citizens.*" 530 U.S. at 498 (Scalia, J., concurring).

Unfortunately, the expansive protections established by these three landmark Supreme Court cases are, in practice, too often treated as mere suggestions, rather than binding constitutional

---

17. *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

18. *Alleyne v. United States*, 570 U.S. 99 (2013).

19. *Erlinger v. United States*, 602 U.S. 821 (2024).

constraints.  Accordingly, a proper analysis of the issues raised by the majority in this case requires a brief historical examination of the expanding legacy of *Apprendi.*

To ensure fairness and prevent authoritarian abuse, the Framers enshrined critical protections for the accused within the Bill of Rights—specifically, the Fifth and Sixth Amendments.  "The Sixth Amendment promises that '[i]n all criminal prosecutions the accused' has 'the right to a speedy and public trial, by an impartial jury.'  Inhering in that guarantee is an assurance that a guilty verdict will issue only from a unanimous jury." *Erlinger,* 602 U.S. at 830 (alteration in original) (quoting *Ramos v. Louisiana,* 590 U.S. 83, 93 (2020)).  "The Fifth Amendment further promises that the government may not deprive individuals of their liberty without 'due process of law.' " *Id.*  "It is a promise that safeguards for criminal defendants those procedural protections well established at common law, including the 'ancient rule' that the government must prove to a jury every one of its charges beyond a reasonable doubt." *Id.* at 830-31; *see Apprendi,* 530 U.S. at 477-78.

Thus, "[t]he Fifth and Sixth Amendments placed the jury at the heart of our criminal justice system.  From the start, those

- 26 -

provisions were understood to require the government to include in its criminal charges 'all the facts and circumstances which constitute the offence.' " *Erlinger*, 602 U.S. at 831 (quoting *Apprendi*, 530 U.S. at 478).

It therefore follows that "the Fifth and Sixth Amendments sought to ensure that a judge's power to punish would 'deriv[e] wholly' from, and remain always 'control[led]' by, the jury and its verdict." *Id.* (alterations in original) (quoting *Blakely v. Washington*, 542 U.S. 296, 306 (2004)). Accordingly,

> [b]y requiring a unanimous jury to find every fact essential to an offender's *punishment*, those amendments similarly seek to constrain the Judicial Branch, ensuring that the *punishments* courts issue are not the result of a judicial 'inquisition' but are premised on laws adopted by the people's elected representatives and facts found by members of the community.

*Id.* at 832 (emphasis added).

Unsurprisingly, "[w]ith the passage of time, and accelerating in earnest in the 20th century, various governments in this country sought to experiment with new trial and sentencing practices." *Id.* Among the various novel sentencing practices developed were sentencing enhancement schemes that allowed judges, after finding certain facts by a mere preponderance of the evidence, to exceed the

maximum sentence permitted by the governing statute for the underlying offense. Such sentencing practices gave rise to constitutional challenges, and "in case after case, [the United States Supreme Court] has cautioned that, while some experiments may be tolerable, all must remain within the Fifth and Sixth Amendments' guardrails." *Id.*

One of the first significant constitutional challenges to sentencing enhancements originated in the landmark decision of *Apprendi*. There, the accused was charged with an offense that carried a statutory *maximum* sentence of ten years in prison. New Jersey, however, had adopted a sentencing enhancement scheme that allowed a judge to exceed the maximum sentence permitted for the charged crime after finding by a preponderance of the evidence that the offender's crime was motivated by racial bias. Acting under that statutory authority, the sentencing judge enhanced the offender's sentence to twelve years. *Apprendi*, 530 U.S. at 468-71.

The Court found New Jersey's practice constitutionally unacceptable because it "allow[ed] a jury to convict a defendant of a second-degree offense based on its finding beyond a reasonable doubt" and "then allow[ed] a judge to impose punishment identical

to that New Jersey provides for crimes of the first degree based upon the judge's finding, by a preponderance of the evidence, that the defendant's 'purpose' was to intimidate his victim" based on the victim's particular characteristic.  *Id.* at 491.  The Court added:

> [T]he relevant inquiry is one not of form, but of effect-- does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict? . . .  The degree of criminal culpability the legislature chooses to associate with particular, factually distinct conduct has significant implications both for a defendant's very liberty, and for the heightened stigma associated with an offense the legislature has selected as worthy of greater punishment.

*Id.* at 494-95.

Thirteen years later, in *Alleyne*, the Court extended the rationale applied in *Apprendi* to any fact that increases the mandatory *minimum* sentence for an offense.  Alleyne was charged with using or carrying a firearm in relation to a crime of violence, which mandated a *minimum* term of imprisonment of five years.  However, the mandatory *minimum* was enhanced to a term of not less than seven years upon the finding that the firearm was brandished.  In convicting Alleyne, the jury verdict form indicated that he had " '[u]sed or carried a firearm during and in relation to a crime of violence,' but did not indicate a finding that the firearm

was '[b]randished.' " *Alleyne*, 570 U.S. at 104 (alterations in original). Nonetheless, the district court found that Alleyne brandished the firearm and sentenced Alleyne to seven years' imprisonment. *Id.*

The Court of Appeals affirmed Alleyne's seven-year sentence. *Id.* However, the United States Supreme Court vacated the sentence and remanded for resentencing. Justice Thomas, writing for the majority, explained:

> But for a finding of brandishing, the penalty is five years to life in prison; with a finding of brandishing, the penalty becomes seven years to life. Just as the maximum of life marks the outer boundary of the range, so seven years marks its floor. And because the legally prescribed range *is* the penalty affixed to the crime, *it follows that a fact increasing either end of the range produces a new penalty and constitutes an ingredient of the offense.*

*Id.* at 112 (second emphasis added) (citation omitted). In reaching his conclusion, Justice Thomas was guided by the following observation:

> Consistent with common-law and early American practice, *Apprendi* concluded that any "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" are elements of the crime. [*Apprendi*, 530 U.S.] at 490, (internal quotation marks omitted); *id.,* at 483, n. 10 ("[F]acts that expose a defendant to a punishment greater than that otherwise

- 30 -

> legally prescribed were by definition 'elements' of a separate legal offense"). We held that the Sixth Amendment provides defendants with the right to have a jury find those facts beyond a reasonable doubt. *Id.* at 484.

*Id.* at 111 (second alteration in original) (footnote omitted).

Consequently, "[b]ecause the finding of brandishing increased the penalty to which [Alleyne] was subjected, it was an element, which had to be found by the jury beyond a reasonable doubt. The judge, rather than the jury, found brandishing, thus violating [Alleyne's] Sixth Amendment rights." *Id.* at 117.

Eleven years after *Alleyne*, in *Erlinger*, the United States Supreme Court once again faced the same question, only this time, unlike *Apprendi* and *Alleyne*, the focus of the enhancement involved recidivism-related issues. At issue was the friction between the Armed Career Criminal Act (ACCA) and the Fifth and Sixth Amendments. ACCA imposed lengthy mandatory prison terms on certain defendants who had previously committed three violent felonies or serious drug offenses on separate occasions. The question before the Court was "whether a judge may decide that a defendant's *past* offenses were committed on separate occasions under a preponderance-of-the-evidence standard, or whether the

Fifth and Sixth Amendments require a unanimous jury to make that determination beyond a reasonable doubt." *Erlinger*, 602 U.S. at 825.

Erlinger pleaded guilty to being a felon in possession of a firearm, which carried a maximum statutory sentence of 10 years. At a sentencing hearing, prosecutors pursued an ACCA sentence enhancement based on a set of 26-year-old convictions for burglaries committed over the course of several days. *Id.* at 826. The enhancement increased the penalty to a mandatory minimum sentence of 15 years.

Erlinger maintained that the burglaries were part of a single criminal episode and did not occur on separate occasions, as required by ACCA. He therefore argued that the question whether he committed these prior burglaries during a single episode or on distinct occasions required an assessment of the facts surrounding those offenses, and that the Fifth and Sixth Amendments required that a jury make that assessment. *Id.* at 827. The trial court rejected the request for a jury and issued a 15-year enhanced sentence. *Id.*

Notably, on appeal, the government conceded error and

admitted that given the factual nature of the inquiry and its impact on a defendant's sentence, the Constitution requires a jury to decide unanimously and beyond a reasonable doubt whether the prior offenses were committed on different occasions.

In line with the reasoning of *Apprendi* and *Alleyne*, the Court held that the Fifth and Sixth Amendments require a unanimous jury to make the determination beyond a reasonable doubt that a defendant's *past* offenses were committed on separate occasions for ACCA purposes. In doing so, the Court explained:

> As the government recognizes, there is no doubt what the Constitution requires in these circumstances: Virtually "any fact" that "increase[s] the prescribed range of penalties to which a criminal defendant is exposed" must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea). Judges may not assume the jury's factfinding function for themselves, let alone purport to perform it using a mere preponderance-of-the-evidence standard. To hold otherwise might not portend a revival of the vice-admiralty courts the framers so feared. But all the same, it would intrude on a power the Fifth and Sixth Amendments reserve to the American people.

*Id.* at 834-35 (alteration in original) (citations omitted).

During a 24-year period spanning from *Apprendi* in 2000 to *Erlinger* in 2024, the Supreme Court has consistently fortified the protections of the Fifth and Sixth Amendments, not as "procedural

formalities," but as " 'fundamental reservation[s] of power' to the American people." *Id.* at 832 (alteration in original) (quoting *Blakely*, 542 U.S. at 305-06). So engrained is the condemnation for sentencing enhancement practices that violate the core principles of the Fifth and Sixth Amendments that Justice Thomas suggested in *Erlinger* revisiting the Court's often-cited 1998 opinion in *Almendarez-Torres v. United States*,[20] which he believed to have been wrongly decided. Justice Thomas noted: "I continue to adhere to my view that we should revisit *Almendarez-Torres* and correct the 'error to which I succumbed by joining that decision.' " *Id.* at 850-51 (Thomas, J. concurring) (quoting *Apprendi*, 530 U.S. at 520 (Thomas, J., concurring)).

Thus, the legacy of *Apprendi* is firmly established as a cornerstone of modern American constitutional law that limits judicial discretion in sentencing. This legacy is at the heart of my dissent.

---

20. "In *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), the Court created a 'narrow exception' to the Sixth Amendment's general rule and allowed a judge to find 'the fact of a prior conviction,' even though that fact increases a defendant's punishment." *Id.* at 850 (Thomas, J., concurring).

## Florida's Prison Releasee Reoffender Punishment Act

The Prison Releasee Reoffender Punishment Act, found in section 775.082(9), Florida Statutes, was one of many sentence enhancement practices developed by the Florida Legislature in the late 1900s and early 2000s to promote public safety—in this instance, the focus of the sentence enhancement was to address the issue of offender recidivism.

Section 775.082(9)(a)1., Florida Statutes (2025), provides the circumstances under which a defendant qualifies for a prison releasee reoffender designation. In relevant part, a defendant qualifies for sentencing as a prison releasee reoffender if the defendant commits, or attempts to commit, any of the qualifying crimes listed in the statute within three years after being released from incarceration in a state correctional facility operated by the Department of Corrections for an offense for which the sentence is punishable by more than one year. Robbery is a qualifying crime. *See id.*

Under this statutory scheme, upon proof from the State establishing by a *preponderance of the evidence* before the *court* that a defendant is a prison releasee reoffender, the *court* may

enhance the defendant's sentence beyond the prescribed sentence permitted by the statute governing the crime committed. *See* § 775.082(9)(a)3. (emphasis added). Consequently, as in *Apprendi*, this statutory scheme allows a *jury* to convict the defendant of the underlying crime beyond a reasonable doubt, only to then allow the *court* to enhance the sentence based upon a mere preponderance of the evidence that he or she reoffended within three years after being released from prison. In this case, the result was Maye being sentenced to a mandatory sentence of life imprisonment. It should come as no surprise, then, that the State conceded that Maye presents a meritorious argument under *Erlinger*.

Here, Maye was convicted of robbery with a deadly weapon in 2002, which required a sentence of "imprisonment for a term of years not exceeding life imprisonment." If not for the sentencing enhancement mandated by the prison releasee reoffender statute, Maye could have reduced his time served in prison to 80% of the original sentence through the accrual of incentive gain-time. However, because the sentencing judge designated Maye a prison releasee reoffender, his life sentence was mandatory. Thus, the enhancement imposed all but guaranteed that Maye will never be

released from prison.

Given the clear mandate of *Apprendi*, *Alleyne*, and particularly *Erlinger*, Florida's Prisoner Releasee Reoffender Act is unconstitutional on its face and, consequently, as applied to Maye. It is for this reason that Maye properly sought relief under Florida Rule of Criminal Procedure 3.800.

## Florida Rule of Criminal Procedure 3.800

Rule 3.800 serves as the court-authorized mechanism for correcting, reducing, or modifying criminal sentences. Rule 3.800(a)(1) provides:

> A court may *at any time* correct an *illegal sentence* imposed by it, or an incorrect calculation made by it in a sentencing scoresheet, when it is affirmatively alleged that the court records demonstrate *on their face* an entitlement to that relief, provided that a party may not file a motion to correct an illegal sentence under this subdivision during the time allowed for the filing of a motion under subdivision (b)(1) or during the pendency of a direct appeal.

(Emphasis added.)

Using rule 3.800(a) as his procedural vehicle, Maye filed a pro se motion to correct his sentence, challenging the legality of his mandatory life sentence pursuant to the prison releasee reoffender

- 37 -

statute. He argued that under *Apprendi*, the statute was unconstitutional on its face and as applied to him.

Skirting the question of whether Florida's Prison Releasee Reoffender Punishment Act is unconstitutional on its face and as applied to Maye, the majority has instead fixated on whether rule 3.800(a) was the correct procedural vehicle for Maye to have used to raise his claim. The majority concludes that the error claimed by Maye does not qualify as an "illegal sentence" under rule 3.800(a) because it is curable. In other words, because a violation of the mandate of *Apprendi* and its progeny in this case may be subjected to a *harmless error* analysis, "additional proceedings, modifications, or findings *could* . . . salvage [ ] the sentence and [bring] it into conformity with statutory or constitutional requirements." Concurring op. at 18-19 (Grosshans, J., concurring) (emphasis added).

Given this reasoning, the majority today recedes from our decision in *Plott v. State*, 148 So. 3d 90 (Fla. 2014). There, we held "that upward departure sentences that are unconstitutionally enhanced in violation of *Apprendi* and *Blakely* patently fail to comport with constitutional limitations, and consequently, the

sentences are illegal under rule 3.800(a)." *Id.* at 95. However, rather than quashing the sentence and remanding the case for a hearing to exclude the clearly unconstitutional enhancement, this Court remanded the case for a *harmless error* analysis under *Galindez v. State*, 955 So. 2d 517 (Fla. 2007). The majority now claims that this Court's remand for a harmless error analysis in *Plott* confirms its position that Maye's claim does not qualify as an "illegal sentence" under rule 3.800(a) because it is salvageable, i.e., the constitutional defect is harmless.

Sure enough, in his dissent in *Erlinger*, Justice Kavanaugh addressed the applicability of the harmless error analysis to "most constitutional errors, including Sixth Amendment errors." *Erlinger*, 602 U.S. at 859 (Kavanaugh, J., dissenting). He noted:

> The harmless-error rule serves an important purpose. It ensures that appellate courts do not set aside convictions or sentences "*for small errors or defects* that have little, if any, likelihood of having changed the result." So, if a constitutional error is harmless "beyond a reasonable doubt," the defendant's conviction and sentence should be affirmed.

*Id.* (emphasis added) (citations omitted).

Applying that interpretation to the facts in *Erlinger*, Justice Kavanaugh continued: "In most (if not all) cases, the fact that a

judge rather than a jury applied ACCA's different-occasions requirement will be harmless. Whether prior felonies occurred on different occasions under ACCA is usually a *straightforward question.*" *Id.* (emphasis added). In the end, Justice Kavanaugh concluded that "any Sixth Amendment error in [*Erlinger*] was harmless."[21] *Id.* at 861.

However, Justice Gorsuch, writing for the majority in *Erlinger*, declined to afford the same weight to the simplicity of the case when determining the applicability of the harmless error doctrine. He concluded:

> We do not question *amicus*'s assessment that in many cases the occasions inquiry will be "straightforward." Often, a defendant's past offenses will be different enough and separated by enough time and space that there is little question he committed them on separate occasions. *But none of that means a judge rather than a jury should make the call. There is no efficiency exception to the Fifth and Sixth Amendments.*

*Id.* at 842 (majority opinion) (second emphasis added) (citation omitted).

---

21. Chief Justice Roberts concurred with Justice Kavanaugh's conclusion that Fifth and Sixth Amendment violations are subject to harmless error review. *See Erlinger*, 602 U.S. at 849-59 (Roberts, C.J., concurring).

Significantly, Justice Gorsuch added:

> In a free society respectful of the individual, a criminal defendant enjoys the right to hold the government to the burden of proving its case beyond a reasonable doubt to a unanimous jury of his peers " 'regardless of how overwhelming' the evidence may seem to a judge."

*Id.* (quoting *Rose v. Clark*, 478 U.S. 570, 578 (1986)).

Critical to the application of the harmless error rule in this case, the majority in *Erlinger* expressed the significance of the ruling in *Apprendi*:

> As the government recognizes, there is no doubt what the Constitution requires in these circumstances: *Virtually "any fact" that "increase[s] the prescribed range of penalties to which a criminal defendant is exposed" must be resolved by a unanimous jury beyond a reasonable doubt* (or freely admitted in a guilty plea).

*Id.* at 834 (alteration in original) (emphasis added) (quoting *Apprendi*, 530 U.S. at 490).

Therefore, the majority in *Erlinger* concluded that the only viable consideration is whether a unanimous *jury* made the determination beyond a reasonable doubt. Any fact that increases the prescribed range of the sentence must be submitted to a jury and proved beyond a reasonable doubt, "regardless of how overwhelming the evidence may seem to a judge." *Id.* at 842

(citation modified).  The fact that the *Apprendi* error committed in this case would "have little, if any, likelihood of having changed the result"[22] is irrelevant.  Thus, the harmless error rule has no role in an *Apprendi* analysis and, consequently, cannot pose an impediment to declaring Maye's sentence enhancement as an "illegal sentence" for rule 3.800(a) purposes.  Accordingly, rule 3.800(a) was the perfect procedural vehicle for Maye to pursue this constitutional claim.

As we observed in our seminal decisions on harmless error, *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986) (articulating harmless error standard in criminal cases), and *Special v. West Boca Medical Center*, 160 So. 3d 1251, 1256 (2014) (articulating harmless error standard in civil cases), "[t]he purpose of the harmless error analysis is to 'conserve judicial labor by holding harmless those errors which, in the context of a case, do not vitiate the right to a fair trial and, thus, do not require a new trial.' " *Special*, 160 So. 3d at 1254-55 (quoting *DiGuilio*, 491 So. 2d at 1135).  We further explained in *Special* that "the [appellate] court's

_____

22.  *Erlinger*, 602 U.S. at 859 (Kavanaugh, J., dissenting) (quoting *Neder v. United States*, 527 U.S. 1, 19 (1999)).

obligation is to focus on the effect of the error on the trier-of-fact and avoid engaging in an analysis that looks only to the result in order to determine harmless error." *Id.* at 1256-57.

In *DiGuilio,* this Court explained that in order to demonstrate harmless error, "the beneficiary of the error [has the burden] to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." 491 So. 2d at 1135, 1139 (citing *Chapman v. California,* 386 U.S. 18, 24 (1967)).

Moreover, the *DiGuilio* test is consistent with the harmless error rule codified in section 59.041[23] and the Legislature's intent

---

23. Section 59.041, Florida Statutes (1985), provides:

No judgment shall be set aside or reversed, or new trial granted by any court of the state in any cause, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in *a miscarriage of justice.* This section shall be liberally construed.

(Emphasis added.)

that relief be granted only in the event of "a miscarriage of justice." *Special*, 160 So. 3d at 1257. Thus, "[a]n appellate court's harmless error analysis is not limited to the result in a given case, but it necessarily concerns the process of arriving at that result." *Id.* Quoting Roger J. Traynor, *The Riddle of Harmless Error*, at 17 (1970), this Court observed: "A large word like justice, incorporated into a rule governing harmless error, compels an appellate court to concern itself not alone with a particular result but also with the very integrity of the judicial process." *Id.*

Originally designed as a narrow, pragmatic tool to conserve judicial resources, the harmless error doctrine has, unfortunately, grown into a frequent, and powerful, barrier for appellants. It encourages prosecutor misconduct, particularly during the closing argument phase where, regardless of how improper the argument may have been, it will likely be deemed harmless considering the strength of the prosecution's case. And, as in this case, it erases constitutional law by skipping the error-identification step.

## CONCLUSION

As noted by Justice Kavanaugh in his dissent in *Erlinger*, the harmless error rule serves a legitimate purpose of preventing

- 44 -

retrials for trivial errors. However, in many instances—as in this case—the harmless error rule allows appellate courts to condone constitutional violations for the sake of judicial efficiency, or, to avoid making a tough call. Unfortunately, in doing so, rights specifically and unequivocally guaranteed by the Constitution to those accused and convicted of crimes are diluted. As Justice Gorsuch said in *Erlinger,* "there is no efficiency exception to the Fifth and Sixth Amendments."

Today, ignoring 24 years of unambiguous directives from the Supreme Court, with assistance from the harmless error rule, the majority disposes of this case by incorrectly concluding that Florida Rule of Criminal Procedure 3.800 is an improper procedural vehicle for Maye to challenge his sentence.

Florida's Prison Releasee Reoffender Punishment Act was in effect in 2002 when Maye was convicted of robbery with a deadly weapon and, inconceivably, it remains unchanged in 2026. In the two decades following the *Apprendi* decision, the Florida Legislature has not conformed the statute to constitutional standards, and the trial courts around the state continue to regularly sentence defendants pursuant to it. This Court, rather than addressing the

threshold question of the statute's constitutionality, chooses to sidestep it.

Notwithstanding the widespread rhetorical emphasis on the importance of the rule of law, the State of Florida has a statute in place that violates the Fifth and Sixth Amendments of the Constitution of the United States. In each instance that a judge in this state enters an order enhancing a prisoner's sentence pursuant to the Prison Releasee Reoffender Punishment Act without a jury's factual determination beyond a reasonable doubt, the rule of law is ignored. There is no greater rule of law in our country than the Constitution of the United States.

This Court should (1) rule that Florida's Prison Releasee Reoffender Punishment Act violates the Fifth and Sixth Amendments both on its face and as applied to Maye, and (2) quash the portion of Maye's sentence illegally enhanced by the trial court and remand this case for a new sentencing hearing.

Because the majority chooses not to do so, I dissent.

Application for Review of the Decision of the District Court of Appeal
  Statutory Validity/Direct Conflict of Decisions

  Sixth District - Case No. 6D2023-1438

(Orange County)

William R. Ponall, Eric J. Sorice, and Laura L. Cepero of Ponall Law, Maitland, Florida,

for Petitioner

James Uthmeier, Attorney General, Tallahassee, Florida, Jeffrey Paul DeSousa, Acting Solicitor General, Tallahassee, Florida, Rebecca Rock McGuigan, Bureau Chief, Daytona Beach, Florida, and Richard A. Pallas, Jr., Assistant Attorney General, Daytona Beach, Florida,

for Respondent

Daniel Tibbitt of Daniel J. Tibbitt, P.A., North Miami, Florida; Benjamin Eisenberg of Office of the Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida; and Jackie Perczek of Black Srebnick, Miami, Florida,

for Amicus Curiae Florida Association of Criminal Defense Lawyers

Timothy Dean Hawkins, Milton, Florida,

for Amicus Curiae Timothy Dean Hawkins

Roger Cassidy, Mayo, Florida,

for Amicus Curiae Roger Cassidy